IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARTIN MENDOZA, JR. § | |
| (TDCJ No. 1834642), § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | No. 3:14-cv-3690-N-BN |
| § | |
| WILLIAM STEPHENS, Director § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Martin Mendoza, Jr., a Texas inmate, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, the application should be denied.

**Background**

This federal habeas application concerns Mendoza's 2013 conviction for unlawful possession of a firearm by a felon. *See State v. Mendoza*, F-1200774-J (Crim. Dist. Ct. No. 3, Dallas Cnty., Tex.). Mendoza pleaded guilty pursuant to a plea agreement, and he was sentenced to 15 years' imprisonment.[1]

He did not appeal this conviction and sentence but instead filed a state habeas

---

[1] Mendoza also simultaneously pleaded guilty to possession with the intent to distribute a controlled substance. *See State v. Mendoza*, F-1163193-J (Crim. Dist. Ct. No. 3, Dallas Cnty., Tex.). But that conviction, challenged through a separate state habeas application, is not now before this Court.

application, raising claims that his trial counsel was constitutionally ineffective, that a search and seizure was illegal, that the trial court erred, and that there was prosecutorial and police misconduct. The Texas Court of Criminal Appeals ("CCA") denied his petition without written order on the findings of the trial court, made without a live hearing. *See Ex parte Mendoza*, WR-81,428-01 (Tex. Crim. App. July 6, 2014) [Dkt. No. 10-1]; *see also* Dkt. No. 10-7 at 61-84 (trial court findings of fact and conclusions of law and counsel affidavits).

In his timely-filed federal habeas application, Mendoza raises the following grounds: (1) illegal search and seizure/illegal arrest; (2) ineffective assistance of counsel; and (3) denial of due process and equal protection.

## Legal Standards

Review of State Court Adjudications

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s]

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

Review of Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that

they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id*. at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards

of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, ___ S. Ct. ____, No. 15-723, 2016 WL 1278478 (Apr. 4, 2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

## Analysis

One basis for Mendoza's claim that his trial counsel provided constitutionally ineffective assistance is that the guilty plea was not entered voluntarily because

counsel coerced him into a plea. *See* Dkt. No. 3 at 6 (counsel "ill-advised me into guilty plea after I denied the State's offer in front of Judge Lewis").

But most of Mendoza's claims do not challenge the voluntariness of his guilty plea and would therefore be waived if the guilty plea was voluntarily entered. *See, e.g.*, *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (claims of ineffective assistance of counsel, for example, are waived by a voluntary and intelligent guilty plea "except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea"); *Young v. Quarterman*, No. SA-06-CA-1003-NN, 2007 WL 2572043, at *27 (W.D. Tex. Sept. 4, 2007) ("A guilty plea, voluntarily entered, waives all nonjurisdictional errors by the trial court that preceded the petitioner's guilty plea." (collecting cases, including *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."))); *see also Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) (per curiam) ("[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.").

The undersigned therefore begins by analyzing the state habeas court's decision as to the voluntariness of Mendoza's guilty plea.

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

The United States Court of Appeals for the Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) the defendant's full understanding of the charges; and (3) the defendant's realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). These core concerns are addressed by the admonishments contained in article 26.13 of the Texas Code of Criminal Procedure. *See, e.g.*, *Ojena v. Thaler*, No. 3:10-cv-2601-P-BD, 2011 WL 4048514, at *1 & n.1 (N.D. Tex. Aug. 25, 2011), *rec. adopted*, 2011 WL 4056162 (N.D. Tex. Sept. 12, 2011).

Here, the state habeas court found that Mendoza's pleas was not involuntary:

> Mendoza claims that counsel coerced him into a plea. Counsel Efrain Sain has provided an affidavit addressing Mendoza's claims. The Court remembers the case, knows Attorney Sain and finds his recollection to be credible and worthy of belief. Counsel avers that Mendoza decided to plead guilty after being admonished by the Court that his jail

> correspondence would be used in evidence against him. Mendoza's decision to plead was a personal decision of his and was not the product of coercion by his attorney. No adequate basis for relief is presented.

Dkt. No. 10-7 at 63-64; *see also id.* at 68-71 (counsel's sworn affidavit) (explaining that Mendoza "reluctantly agreed to accept the plea offer" after being "lambasted" by the state trial judge regarding Mendoza's continuing "to speak and write about the case while in jail, knowing the State could use that information against him" and that counsel had reviewed "some of [these] letters with [Mendoza,] showing how it appeared he or his mother was trying to get the co-defendant, his girlfriend, to claim responsibility for some of the evidence or to state other reasons for the evidence being in the apartment").

Also relevant to the state habeas court's determination that Mendoza's guilty plea was voluntary was counsel's sworn testimony concerning Mendoza's claim that counsel prevented him from "present[ing] his case to a jury or to a fair hearing on illegal search and seizure issues":

> It is true that he lost those opportunities but that was his choice when he decided to accept the plea offer. I clearly explained these consequences to him before he signed and accepted the plea offer. He signed documents in the paperwork for the plea that he understood these consequences. We discussed these consequences not only at the time of plea but also prior to that date.
> When I first started on the case, he had told me he did not want to accept a plea because he wanted to present his case to the jury or the judge.... When he changed his mind we had discussed specifically that he then would not be able to argue the inaccuracies between the time line presented by the dispatch and the police report. He was aware of these consequences but seemed to be motivated by the jail evidence the State had recently given me.

*Id.* at 70.

Particularly in light of this testimony, Mendoza has not shown "that the state habeas court's conclusion" that his guilty plea was entered voluntarily (and therefore his related claims of ineffective assistance of counsel should be denied) "amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

Therefore, the remainder of Mendoza's claims are barred from federal habeas review.

Specifically, because his remaining claims of ineffective assistance of counsel – regarding a requested fingerprint analysis, a motion to suppress, and investigation of witnesses – do not implicate the voluntariness of his guilty plea; thus, those grounds have been waived. *See Smith*, 711 F.2d at 682 (claims of ineffective assistance based on alleged failure to review evidence, failure to investigate witnesses or the legality of petitioner's arrest, and failure to find "holes" in prosecution case were non-jurisdictional and waived by valid guilty plea); *see also, e.g.*, *Wisener v. Thaler*, No. 4:09-cv-359-Y, 2010 WL 546738, at *3 (N.D. Tex. Feb. 17, 2010) ("[T]o the extent [Petitioner] complains that he is innocent of the charged offense ..., that there was insufficient evidence to support his conviction, and that trial counsel failed to conduct an independent investigation into the facts of his case, to file pretrial motions, and to interview key state witnesses on his behalf, matters unrelated to the voluntariness of his plea, the claims are nonjurisdictional and are waived by the plea." (citing *United States v. Broce*, 488 U.S. 563, 573-74 (1989))).

Mendoza's illegal search and seizure/illegal arrest claim has also been waived. *See, e.g., Norman v. McCotter*, 765 F.2d 504, 511 (5th Cir. 1985) ("Illegal searches and seizures are non-jurisdictional defects that Norman waived his right to challenge when, as found above, he entered a knowing and voluntary guilty plea." (citing *United States v. Bell*, 457 F.2d 1231, 1234 n.1 (5th Cir. 1972))).

And, similarly, Mendoza also has waived his claim that the denial of a motion for continuance, his not obtaining a proper hearing on his motion to suppress, and the denial of a jury trial all violated due process and equal protection guarantees. *See, e.g.*, *Austin v. Cockrell*, No. 3:01-cv-2236-L., 2002 WL 1042121, at *5 (N.D. Tex. May 21, 2002) ("a plea of guilty, if voluntarily and understandingly made, is conclusive as to a defendant's guilt and waives all non-jurisdictional defects including claimed deprivation of federal constitutional due process" (citations omitted)); *Bowman v. Thaler*, No. 4:11-cv-450-A, 2011 WL 5880989, at *3 (N.D. Tex. Nov. 23, 2011) ("petitioner's knowing and voluntary guilty pleas waived not only his right to trial by jury but the right to have his guilt proven beyond a reasonable doubt by a jury").

**Recommendation**

Mendoza's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 4, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE